**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

SCOT HODKIEWICZ,
MONA HODKIEWICZ,
ALEXA HODKIEWICZ,
CHASE HODKIEWICZ and
VICTORIA HODKIEWICZ,

    Plaintiffs,

    v.                                             Case No. 09-C-0554

MICHAEL ELLESTAD,
JAY TAYLOR,
KRISTINE S. TORRES,
DONNA MULLER,
ROBERT C. CLIFFORD,
JAY LAUFENBERG,
LEANN MOBERLY, and
NEW YORK LIFE INSURANCE COMPANY,

    Defendants.

## DECISION AND ORDER

### NATURE OF THE CASE

The plaintiffs initially filed this civil rights action against individual defendants in Walworth County Circuit Court. The defendants are parole agents and their supervisors employed at the Wisconsin Department of Corrections (DOC). On June 2, 2009, the defendants removed the case to federal court. On July 29, 2010, the court granted the plaintiffs' motion to file a second amended complaint, which added Leann Moberly as a defendant. The plaintiffs assert that the defendants, acting under color of law, created a known and present danger to them by intentionally failing to enforce conditions of supervision for Mark Spangler and purposely discontinuing his monitoring systems which resulted in injury to them, in violation of 18 U.S.C. § 1983. Attached to the second amended complaint are copies of judgments of conviction for three of Mark L. Spangler's drunk driving offenses and

a transcript of a June 12, 2001, hearing in which he was sentenced for those offenses and entered a plea in another offense. Neither the State of Wisconsin nor any of its agencies are a party to this action.

On July 15, 2010, the defendants filed a motion for judgment on the pleadings. (Docket # 68). The plaintiffs filed a response to this motion which included additional materials that were not included in the second amended complaint. On August, 17, 2010, the defendants filed a motion to strike the plaintiffs' submissions that were not included in the second amended complaint pursuant to Fed. R. Civ. P. 12(c) and (d). (Docket # 86). These motions have been fully briefed and will be addressed herein.

## **JUDGMENT ON THE PLEADINGS**

A party may move for a judgment on the pleadings "after the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standards as a Rule 12(b)(6) motion to dismiss. United States v. Wood, 925 F.2d 1580, 1581 (7th Cir. 1991). In ruling on a motion for dismissal, the court must presume all of the well-pleaded allegations of the complaint to be true. Papasan v. Allain, 479 U.S. 265, 283 (1986) (citing Miree v. DeKalb County, 433 U.S. 25, 27 n.2 [1977]). "A party fails to state a claim . . . only if [it] 'can prove no set of facts upon which relief may be granted.' We assume well-pleaded allegations are true and . . . draw all reasonable inferences in the light most favorable to the plaintiff." Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir. 1990) (citation omitted). In cases under § 1983, the court may not apply a pleading standard that is more stringent than the notice pleading required by the federal rules. Sherwin Manor Nursing Center, Inc. v. McAuliffee, 37 F.3d 1216, 1219 (7th Cir. 1994) (citing Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 113 S.Ct. 1160 [1993]).

## **FACTUAL ALLEGATIONS OF THE SECOND AMENDED COMPLAINT**

Mark Spangler was convicted of causing injury by driving drunk in 1991. He also was convicted of drunk driving offenses in 1994 and 1999. In 2000, Mr. Spangler was arrested for drunk driving on three separate occasions. He was convicted for all three offenses on March 12, 2001, and sentenced on June 12, 2001. Mr. Spangler was sentenced to prison and it was ordered that, when he was released from prison to extended supervision, he be prohibited from (1) consuming any alcohol, (2) operating a motor vehicle without a valid driver's license and the permission of his extended supervision agent, and (3) possessing the keys to a motor vehicle without the written permission of his extended supervision agent.

Mr. Spangler was released from prison to extended supervision on August 11, 2005. Between November 9, 2005, and September 14, 2006, during the course of his extended supervision, it came to the attention of the defendants that Mr. Spangler consumed alcohol on six occasions and that he consumed alcohol and drove a vehicle on two occasions. On one of the occasions that Mr. Spangler drove while intoxicated, he caused property damage. Mr. Spangler also admitted to the defendants that he had stolen money and possessed child pornography while on extended supervision. Despite these known violations of his extended supervision, on or about September 28, 2006, defendant Michael Ellestad, with the approval of defendants Jay Taylor and Leann Moberly, removed the home sobrietor from Mr. Spangler's residence and discontinued his participation in the electronic monitoring program. Defendant Ellestad told Mr. Spangler's mother that he was going to "give Spangler enough rope to hang himself." (Plaintiffs' Second Amended Complaint at 9).

On October 22, 2006, the Hodkiewicz family was in a vehicle heading southbound on Interstate 39 in Madison, Wisconsin. Mr. Spangler was driving another vehicle in a northbound direction on the same interstate when he crossed the median and struck the Hodkiewicz

- 3 -

vehicle head-on. Prior to operating the vehicle that day, Mr. Spangler had consumed alcohol and, at the time of the collision, his blood alcohol concentration was 0.25, which is more than three times the legal limit. The plaintiffs sustained severe and permanent personal injuries in the accident.

In their response to the motion for judgment on the pleadings, the plaintiffs attached several additional documents, including an affidavit of Attorney Lisle W. Blackbourn, several deposition transcripts, exhibits from these depositions, an expert report from Michael Sullivan, excerpts from the Wisconsin DOC, Division of Community Corrections Operations Manual, a certified copy of Mr. Spangler's driving record, and correspondence produced by the defendants in discovery. Rule 12(c) of the Federal Rules of Civil Procedures provides that if, on a motion for judgment on the pleadings, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(c). If converted, the court must provide all parties with a "reasonable opportunity" to present all material that is pertinent to the motion. Id. Despite this rule, the court of appeals for this circuit has also held that a plaintiff "may add [pertinent facts] by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." Help at Home, Inc. v. Med. Capital, L.L.C., 260 F.3d 748, 753-53 (7th Cir. 2001)[1].

The defendants filed a motion for judgment on the pleadings, which "as the title of the rule implies, . . . permits a judgment based on the pleadings alone." N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998). The plaintiffs rely on Help at Home to support their contention that the court may consider the materials submitted

---

[1] While Help at Home addresses a motion to dismiss, not a motion for judgment on the pleadings, the same standards apply to both motions. See Wood, 925 F.2d at 1581.

- 4 -

with their response to the defendants' motion. The court has reviewed the additional materials and has determined that they will not affect the outcome of the decision. The issue to be determined by the defendants' motion is one of law and the facts, whether supplemented by those contained in the additional materials or not, do not alter the outcome. Therefore, for the purpose of deciding the defendants' motion, the court will not consider the additional materials submitted by the plaintiffs.

## **ANALYSIS**

In seeking judgment on the pleadings, the defendants assert that the plaintiffs have failed to state a claim under the due process clause because the state has no duty to protect its citizens from harm. The defendants also claim that they are entitled to qualified immunity.

The plaintiffs contend that the defendants' arguments are barred by the delay in raising the issues. However, the defendants filed their motion "after the pleadings [ ] closed – but early enough not to delay trial," as required by the rule, so the defendants' arguments are not barred by any delay in raising them. Fed. R. Civ. P. 12(c). The plaintiffs also maintain that they have stated a claim for a constitutional violation based on the defendants' intentional, affirmative acts which "shock the conscience." (Plaintiffs' Brief in Opposition to Defendants' Motion for Judgment on the Pleadings [Plaintiffs' Brief] at 18). In addition, the plaintiffs state that the defendants are not entitled to qualified immunity because they violated a well-established constitutional right.

With respect to whether the defendants violated a constitutional right of the plaintiffs, it is well established that a "State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago County Dep't of Soc. Serv., 489 U.S. 189, 197 (1989). In DeShaney, the department of social services was aware that a father was physically abusing his four-year-old son and temporarily

removed the child from the father's home.  The department returned the boy to his father's custody and, despite the father's failure to cooperate with the department and repeated instances of child abuse, took no further action to remove the child from danger.  Shortly thereafter, the father beat the son so badly that he was expected to spend his life confined to an institution.  The Court found that the due process clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."  Id. at 195.  The Court held that while the defendants were aware of the danger faced by the child, they were not complicit in the violence and did not cause the child to be any more vulnerable.  The state "placed [the child] in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter."  Id. at 201. Thus, the court found that the defendants had not violated the Constitution and upheld summary judgment in favor of the defendants.

Other cases have applied DeShaney to similarly tragic facts.  The court of appeals for this circuit found that state actors did not violate a constitutional right when a prisoner on work release murdered three victims.  Sandage v. Bd. of Comm'r of Vanderburgh County, 548 F.3d 595, 598 (7th Cir. 2008).  In Sandage, the state actors had received two complaints from one of the victims stating that the prisoner was harassing her, yet the state did not revoke the prisoner's work release.  Even so, the court found that "there is no federal constitutional right to be protected by the government against private violence in which the government is not complicit."  Id. at 596. The court also notes that while the defendants may have had a "commitment to protect" the plaintiff, that commitment "is not enforceable under the Fourteenth Amendment."  Id. at 599.  Thus, the court upheld the dismissal of the suit for failure to state a claim.

There are exceptions to DeShaney. The government has a duty to protect its citizens "if the state disables people from protecting themselves." Id. at 598. The court in Sandage discussed White v. Rochford, 592 F.2d 381 (7th Cir. 1979), as an example of a case in which the government was found to have a duty to protect citizens from private harm because the dangerous situation was created by the government. In White, police officers arrested an adult driver on a busy highway, leaving three minor children to fend for themselves. The children were forced to spend hours on the side of the highway in cold weather and eventually cross eight lanes of busy traffic to seek help. One child suffered an asthma attack and spent one week in the hospital; the other two children suffered emotional damage. The court found that the conduct of the officers violated the due process clause. "[H]aving rendered someone helpless, the state must supply the sort of defenses that the person could have provided on his own." Sandage, 548 F.3d at 598; see also, Reed v. Gardner, 986 F.2d 1122 (7th Cir. 1993) (police officers violated the due process clause when they arrested a sober driver, left a drunk passenger in the car with keys, and the drunk passenger proceeded to drive the car and injure others in an accident).

Discussing White and similar cases, the court in Sandage clarified when a plaintiff can complain of a failure to protect under the Fourteenth Amendment:

> [F]irst, 'the state, by its affirmative acts, must create or increase a danger faced by an individual. Second, the failure on the part of the state to protect an individual from such a danger must be the proximate cause of the injury to the individual. Third, . . . the state's failure to protect the individual must shock the conscience.'

Sandage, 548 F.3d at 599 (quoting King v. St. Louis School Dist. 189, 496 F.3d 812, 818 [7th Cir. 2007]). The court further clarified the first element by stating that "increasing" the danger of private violence means "that the state did something that turned a potential danger into an

actual one, rather than that it just stood by and did nothing to prevent private violence." Id. at 600.

Here, presuming all allegations in the second amended complaint are true, the defendants knew of Mr. Spangler's extensive drunk driving history. The defendants also knew that Mr. Spangler had violated the terms of his extended supervision on several occasions and was continuing to drink and drive while under the defendants' supervision. Despite this knowledge, the defendants did not revoke Mr. Spangler's extended supervision and even removed some of the restrictions Mr. Spangler faced while on extended supervision.

This case is closely analogous to both DeShaney and Sandage. In DeShaney, the defendants knew that the father continued to physically abuse his son after the son was returned to the father's custody. In Sandage, the defendants knew that the prisoner was repeatedly harassing a woman while on work release. In both cases, the defendants failed to mitigate the known harm – the defendants in DeShaney did not remove the son from his father's custody and the defendants in Sandage did not revoke the prisoner's work release. In this case, like in DeShaney and Sandage, the defendants' failure to act had disastrous results. However, as in DeShaney and Sandage, the most that can be said of the defendants in this case "is that they stood by and did nothing when suspicious circumstances dictated a more active role for them." DeShaney, 489 U.S. at 203. Just as the plaintiffs in DeShaney and Sandage were in no worse position than that they would have been in if the state had not acted at all, so the plaintiffs here were in no worse position than if the state had not acted. Id. at 201. Therefore, the defendants did not violate the plaintiffs' constitutional rights.

Contrary to the plaintiffs' contentions, this case is distinguishable from White and Reed. In those cases, the state actors took affirmative steps that actually created a danger which did not exist before they were involved. The children in White had an adult caretaker with them

before the police arrested him and left the children alone on the side of a busy highway in cold weather. The drunk passenger in Reed was being driven by a sober driver before the police arrested that driver and left the passenger with the keys and no other means of leaving the scene. In contrast, the defendants in this case did nothing to create or increase the danger posed to the plaintiffs by Mr. Spangler. While the defendants' actions or inactions in this case may "shock the conscience" as the plaintiffs assert, the plaintiffs overlook that the defendants also must create or increase the danger in order to fit within an exception to DeShaney. See Sandage, 548 F.3d at 599.

Other cases cited by the plaintiffs are either similarly not on point or are no longer good law in light of DeShaney. For instance, in Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1993), the defendant police officers were complicit in the danger because they informed skinheads that they could assault demonstrators and would not be punished. The court in Dwares found that the case was distinguishable from DeShaney because "the defendant officers indeed had made the demonstrators more vulnerable to assaults" and had "aided and abetted" the deprivation of rights. Id. at 99. The court's decision in Petrone v. Pike County Probation Dept., 240 F. Supp. 2d 317 (M.D. Pa. 2002) begins with the words "[t]he facts underlying this dispute are well known and need not be restated here." Id. at 319. Thus, it is impossible to know the actual factual scenario of that case and whether it is applicable. Nishiyama v. Dickinson County, Tenn., 814 F.2d 277 (6th Cir. 1987), is no longer considered an accurate statement of the law. See Jones v. Reynolds, 438 F.3d 685, 694-95 (6th Cir. 2006).

The other cases cited by the plaintiff are based on facts in which the state actors directly violated a constitutional right, not so-called failure to protect fact scenarios like this case. See Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000) (state actors conspired

to deprive plaintiff of constitutional rights by removing him from parents' custody); T.E. v. Grindle, 599 F.3d 583 (7th Cir. 2010) (defendants' motion for summary judgment denied because there may be sufficient facts to establish equal protection and substantive due process violations when a teacher molested female schoolchildren and a principal affirmatively covered up the abuse); Rochin v. People of Calif., 342 U.S. 165 (1952) (state actors induced plaintiff to vomit); Carter v. Simpson, 328 F.3d 948 (7th Cir. 2003) (state actor caused automobile collision); Bublitz v. Cottey, 327 F.3d 485 (7th Cir. 2003) (state actors pursuing a criminal in a high-speed chase on a busy highway used a tire deflation device, causing the criminal's car to collide with the plaintiffs); Armstrong v. Squadrito, 152 F.3d 564 (7th Cir. 1998) (state actors caused plaintiff to be held in custody for an extended period of time because they misfiled his records). Thus, these cases are unpersuasive. Accordingly, while the court is not unsympathetic to the plaintiffs, they have failed to state a claim under the substantive due process clause.

The defendants have also filed a motion to strike the additional materials submitted by the plaintiffs in response to the defendants' motion for judgment on the pleadings. As stated, for the purpose of determining the motion for judgment on the pleadings, this court did not consider the additional materials submitted by the plaintiff. Further, even if the court had taken the facts in those materials into consideration, they would not have altered the outcome of the motion for judgment on the pleadings. Therefore, the defendants' motion to strike will be denied as moot. Despite this, there is an assertion by the plaintiffs which is based on these additional materials that the court will address.

The plaintiffs assert in their responsive brief and the materials attached to it that defendant Ellestad intentionally misrepresented Mr. Spangler's drunk driving history to his supervisors before removing Mr. Spangler's sobrietor and taking him off of electronic

monitoring. The plaintiffs contend that defendant Ellestad intentionally created danger and disregarded safety by these acts. The court in Sandage was careful to emphasize that "'create or increase' must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect." Sandage, 548 F.3d at 599.

These facts do not show that he created or increased the danger as defined by the court in Sandage, whether the actions were intentional or not. Defendant Ellestad's actions are no different from those in DeShaney, where the defendants made the intentional, affirmative decision to return the son to the father's custody (and then not to remove the son again in the face of evidence of continued abuse), or in Sandage, where the defendants made the intentional, affirmative decision to allow the prisoner to remain on work release, despite the known risks. Even after the decision was made to remove the sobrietor and electronic monitoring, the fact remains that the plaintiffs were at no greater risk from Mr. Spangler than if the defendants had never been involved at all. It is also worth noting that the sobrietor and electronic monitoring had not kept Mr. Spangler from violating his extended supervision. While the defendants may have revoked Mr. Spangler's extended supervision and sent him back to prison, "[n]o one has a federal constitutional right to have another person jailed." Sandage, 548 F.3d at 597 (citing Town of Castle Rock v. Gonzales, 545 U.S. 748, 768 [2005]). Therefore, neither the allegations in the complaint nor the additional materials submitted by the plaintiffs establish that the defendants had a constitutional duty to protect the plaintiffs from the private harm posed by Mr. Spangler.

In sum, the defendants did not have a duty to protect the plaintiffs from private harm in which the defendants were not complicit. Sandage, 548 F.3d at 596. Therefore, the plaintiffs have failed to establish a claim under the due process clause because they have not

shown that the defendants' actions or inactions violated the Constitution.  The defendants' motion to strike will be denied as moot.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for judgment on the pleadings be and hereby is **granted**.  (Docket # 68).

**IT IS ALSO ORDERED** that the defendants' motion to strike be and hereby is **denied** as moot.  (Docket # 86).

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 28th day of March, 2011.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge
